| ExcelUSMLE Review LLC v Reddy |
| :---: |
| 2026 NY Slip Op 30716(U) |
| March 2, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 654449/2025 |
| Judge: Andrew Borrok |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 53

------------------------------------------------------------------------------------X

EXCELUSMLE REVIEW LLC,ALI FAROOQI

Plaintiff,

- v -

SHRAVAN REDDY, APLIHSMD LLC,

Defendant.

------------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 654449/2025 |
| **MOTION DATE** | 09/04/2025 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 34, 35, 36, 37, 38, 39, 62, 63

were read on this motion to/for                PREL INJUNCTION/TEMP REST ORDR                .

Upon the foregoing documents and for the reasons set forth on record (*tr.* 3.2.26), the Plaintiffs'

motion for a preliminary injunction is GRANTED as unopposed.

## THE RELEVANT FACTS AND CIRCUMSTANCES

The Plaintiffs seek a preliminary injunction to enforce certain confidentiality, non-compete, and

non-solicitation restrictive covenants that are part of the Operating Agreement (hereinafter

defined) of ExcelUSMLE Review, LLC (**Excel**) against the Defendants.

Reference is made to a certain Limited Liability Operating Agreement (the **Operating**

**Agreement**; NYSCEF Doc. No. 13) dated as of June 1, 2024 by and between Ali Farooqi and

Shravan Reddy.  Pursuant to the Operating Agreement, the parties agreed to restrict Dr. Reddy's

use of confidential information obtained while a member of Excel:

24. **Confidentiality.**

654449/2025   EXCELUSMLE REVIEW LLC ET AL vs. REDDY, SHRAVAN ET AL
Motion No.  001

Page 1 of 8

[* 1]

While a Member of the Company, and for a period of three years after a Members interest in the company is terminated by a Withdrawal Event, or the dissolution of the Company, as described above, the Member shall hold and maintain in the strictest confidence and shall not, either directly or indirectly, through any manner or by any means of communication whatsoever, communicate, disclose, use or transfer, or permit the communication, transfer, use or disclosure, of any trade secrets, proprietary information or any other Confidential Information of the Company (as defined below), to any person or entity. Further, Member shall not misappropriate and shall not otherwise use, communicate, disclose, transfer, or permit the use, communication, transfer, or disclosure of any Confidential Information for the Member's own personal benefit, gain, or advantage, or for the benefit, gain or advantage of any other person or entity except for the benefit of the Company, including but not limited to, any person or entity by whom/which Member is subsequently employed as an employee, contractor, consultant, or in any other capacity.

Members agreed that they will possess and use Confidential Information only during the term of their membership in the Company and only in the Company's interests.

Confidential Information includes: (1) any and all business methods, plans and practices, documents and materials, trade secrets, technical data, know-how and all proprietary information; (2) all information relating to past, current, or potential customers, clients, medical students, applicants for residency or fellowships and other students, hospitals, agencies or medical schools arranging rotation and any other customers/clients of the Company (collectively, the "Clients"), including all non-public information about all aspects of their businesses, student lists, work in progress information, research, services, and any other student, hospital, agency or medical school information); and all information on Client leads/referrals and all sources for Client leads/referrals; (3) all information about market information, marketing, advertising, and business relations, (including all plans, strategies, and methodologies), and all plans, methods, and strategies for determining target markets/Clients, and for implementing such targeted marketing/advertising campaigns; (4) all other information not mentioned above concerning the Company's business affairs, including, without limitation, all financial information and statements, financial projections and budgets, historical and projected sales data, capital spending budgets and plans, compensation (including any commission scale information) and the names and backgrounds of key personnel and contractors, student and/or personnel training techniques, teaching and other materials, software, development, technology, and hardware configuration information; and (5) any other proprietary or confidential information, as described herein, of any third party which may disclose such information to the Company, or of which the Company may become aware, in the course of such third party's business dealings or relationships with the Company.

654449/2025   EXCELUSMLE REVIEW LLC ET AL vs. REDDY, SHRAVAN ET AL          Page 2 of 8
Motion No.  001

2 of 8

"Confidential Information" does not include information that: (a) was already known to the applicable Member free of any confidentiality restrictions at the time it was learned by such Member; (b) is subsequently learned from an independent third party free of any confidentiality restrictions and without breach of this Agreement or any agreement with such independent third party; (c) is or becomes publicly available through no direct or indirect breach or fault of the applicable Member.

(NYSCEF Doc. No. 13 § 24). They also agreed that Dr. Reddy could not compete with Excel, or solicit its employees or other contractors, while he was a member of Excel and for three years thereafter:

**25. Noncompete.**

(a) While a Member of the Company, and for a period of three years (36 months) after a Members interest in the company is terminated by a Withdrawal Event, or the dissolution of the Company, as described above, without the prior written consent of each of the other Members, the affected Member shall not:

(i)(A) employ, assist in employing, or otherwise associate in business with any present or former employee, consultant or contractor, member, manager, officer or agent of the Company, (B) induce any person who is an employee, consultant, contractor, member, manager, officer or agent of the Company to terminate said relationship (C) serve as a partner, employee, consultant, officer, director, manager, agent, associate, investor or otherwise (in any form or capacity) for, or (D) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, or € build, design, finance, acquire, lease, operate, manage, invest in, work or consult for or otherwise become affiliated with, in each case, any business in competition with or otherwise similar to the Company's business within the United States (the "Territory"); or

(ii) induce or attempt to induce any person, company, business or entity who or which is or was a Client, distributor, vendor or supplier to the Company or who had any other business relation with the Company, to cease doing business or reduce its volume of business with the Company or in any way interfere with the relationship between any such Client, distributor, vendor or supplier of the Company of any of its affiliates (including any other Member).

(b) For a period of three years (36 months) after a Member's interest in the company is terminated by a Withdrawal Event, or the dissolution of the Company, as described above, without the prior written consent of each of the other

654449/2025   EXCELUSMLE REVIEW LLC ET AL vs. REDDY, SHRAVAN ET AL          Page 3 of 8
Motion No. 001

3 of 8

Members, the departing or terminated Member shall not (i) contact, make sales to, call upon, render any service to any person, company, business or entity who or which is or was a Client, distributor, vendor or supplier of the Company, (ii) divert, solicit or interfere with any Client, or (iii) disclose, divulge, discuss, copy or otherwise use or suffer to be used in any manner, in competition with, or contrary to the interests of the Company, any of the Company's Confidential Information.

(c) Each Member acknowledges that he will derive significant value from the Company's agreement to provide Confidential Information of the Company to enable such Member to optimize the performance of his duties to the Company. Each Member further acknowledges that his fulfillment of the obligations contained in this Agreement, including, obligation to neither to disclose nor to use the Company's Confidential Information other than for the Company's exclusive benefit and obligation not to compete set forth above, is necessary to protect the Company's Confidential Information and, consequently, to preserve the value and goodwill of the Company and to protect its Client base, its market share and its sources of referrals in a highly competitive, niche market.

Each Member has carefully considered the nature and extent of the restrictions upon such Member and the rights and remedies conferred upon the other Member under this Section 25 and understands and agrees the equal and mutual nature of the restrictions applicable to both Members.

Each Member understands that said restrictions may limit such Member's ability to earn a livelihood in a business similar or competitive to the business engaged in by the Company, however, each Member acknowledges and agrees that such Member has received and will receive sufficient consideration and other benefits so as to justify such restrictions. In addition, each Member acknowledges that the time, geographic and scope limitations of the covenant not to compete are reasonable, especially in light of the Company's desire to protect its Confidential Information, and that such Member will not be precluded from gainful employment if such Member is obligated not to compete with the Company during the period and within the Territory.

The covenant in this Section 25 shall be construed as a series of separate covenants. If, in any judicial proceeding, a court refuses to enforce any of such separate covenants (or any part thereof), then such unenforceable covenant (or such part) shall be eliminated from this Agreement to the extent necessary to permit the remaining separate covenants (or portions thereof) to be enforced. In the event the provisions of subsection (a) or (b) above are deemed to exceed the time, geographic or scope limitations permitted by applicable law, then such provisions shall be reformed to the maximum time, geographic or scope limitations, as the case may be, then permitted by such law.

[* 4]

Each Member agrees that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants contained in any of Sections 24 or 25 of this Agreement. Accordingly, each Member agrees that if he breaches any covenants contained in such Sections 24 or 25 of this Agreement, the Company shall have available to it, in addition to any other right or remedy, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. Each Member further agrees that if he violates any of the terms of Sections 24 and 25 and the Company institutes or initiates any proceedings to enforce the terms of this Agreement, the violating Member shall pay and/or reimburse the Company for all costs, fees and expenses associated with such enforcement, including any attorney's fees incurred by the Company as a result thereof.

### 26. Solicitation of Employees or Other Contractors.

Each Member agrees that for a period of three years (36 months) after a Member's interest in the Company is terminated by a Withdrawal Event or the dissolution of the Company, the exiting Member shall not hire any employees or other consultants or contractors of the Company, and shall not, directly or indirectly, solicit, induce, recruit or encourage any of the Company's employees, consultants or contractors to leave their employment or consultancy with the Company.

(*id.* §§ 25-26).

In his Affirmation (NYSCEF Doc. No. 12), Dr. Farooqi attested that Excel provides international and domestic medical school graduates with U.S. medical residency match preparation services (*id.* ¶¶ 4, 7). Dr. Reddy was previously a minority member of Excel from sometime in 2022 until the he left in February 2023 to establish AplihsMD, a company offering nearly the same services (*id.* ¶¶ 10-11). However, Dr. Reddy was permitted to return to Excel in June 2024 as a 50-percent partner in exchange for agreeing to the restrictive covenants (*id.* ¶ 12).

Dr. Farooqi further attested that Dr. Reddy abruptly resigned from Excel on April 18, 2025 after just 11 months (*id.* ¶ 15). Soon thereafter, he learned that the website for AplihsMD was fully

654449/2025   EXCELUSMLE REVIEW LLC ET AL vs. REDDY, SHRAVAN ET AL
Motion No. 001

Page 5 of 8

5 of 8

operational (*id.* ¶ 16) and contained student testimonials originally submitted to Excel but modified to remove any reference to it (*id.* ¶ 20). The entire staff of Excel (consisting of seven subcontracted physicians and a virtual assistant/administrator) aside from Dr. Farooqi also left Excel to join AplihsMD (*id.* ¶ 16-19).

Dr. Farooqi further attested that he later learned that (i) Dr. Reddy had been misappropriating client lists, proprietary interview questionnaires, and techniques to conduct interview preparation and edit personal statements during his time at Excel, (*id.* ¶ 19), (ii) Excel's virtual assistant/administrator, Ms. Lim, had been assisting Dr. Reddy in setting up AplihsMD while still employed at Excel, (*id.* ¶¶ 21-25) (iii) Dr. Reddy was promoting AplihsMD at various events despite receipt of a cease-and-desist letter (*id.* ¶ 27), and (iv) Dr. Reddy had been interfering with Excel's relationships with its medical school partners (*id.* ¶ 28[b]).

Subsequently, the Plaintiffs filed this action and sought the issuance of a temporary restraining order against the Defendants, which the Court granted (*tr.* 9.5.25).

## DISCUSSION

Under CPLR § 6301, a party seeking a preliminary injunction must demonstrate (i) a probability of success on the merits, (ii) danger of irreparable harm in the absence of an injunction, (iii) a balance of the equities in its favor (CPLR 6301; *Nobu Next Door, LLC v Fine Arts Housing, Inc.*, 4 NY2d 839, 840 [2005]).

654449/2025  EXCELUSMLE REVIEW LLC ET AL vs. REDDY, SHRAVAN ET AL  Page 6 of 8
Motion No. 001

6 of 8

Dr. Reddy admitted in his Affirmation (NYSCEF Doc. No. 55) that, after the TRO was issued on September 5, 2025, the Defendants provided services to, and accepted payments from, approximately 43 medical students that had sought AplihsMD's services (*id.* ¶¶ 19-21, 27, n 3), in violation of the non-compete covenant. The wholesale departure of Excel's contractors to AplihsMD soon after Dr. Reddy's departure indicates that Dr. Reddy solicited their departure from Excel, in violation of the non-solicitation covenant. Thus, the Plaintiffs have demonstrated a probability of success on the merits on their breach of contract and breach of fiduciary duty claims.

The Plaintiffs have also demonstrated a danger of irreparable harm in the absence of an injunction. The Defendants are alleged to have misappropriated all the assets, personnel, and relationships of Excel, effectively misappropriating the entire joint venture, and Dr. Reddy's admitted operation of AplihsMD damages Excel by diluting the value of its goodwill in a way that is irreparable.

Finally, the balance of the equities favors the injunction because, as discussed, Mr. Reddy admitted to providing services to several medical students after the TRO was granted, in violation of the TRO.

Accordingly, it is hereby ORDERED that the Plaintiffs' motion for a preliminary injunction is granted; and it is further

**654449/2025   EXCELUSMLE REVIEW LLC ET AL vs. REDDY, SHRAVAN ET AL**
**Motion No.  001**

Page 7 of 8

7 of 8

[* 7]

ORDERED that the Plaintiffs shall post a bond in the amount of $1,000.00 no later than April 15, 2026.

20260302134206ABORROKBE3049066E8244A7A2D34016E8D60A79

**3/2/2026**
**DATE**

**ANDREW BORROK, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | ☐ DENIED | | GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**654449/2025   EXCELUSMLE REVIEW LLC ET AL vs. REDDY, SHRAVAN ET AL**
**Motion No.  001**

Page 8 of 8

[* 8]